and we'll move to our third case this morning. Hanover Insurance v. R.W. Dunteman Company. All right, I see Ms. Kopalski, Mr. Christensen, and Mr. Cutter. Can you all hear me? Yes, Your Honor. Yes, Your Honor. Yes, Your Honor. All right, then we can proceed. Ms. Kopalski. Good morning, Your Honors. May it please the Court, my name is Stephanie Kopalski and I represent the Dunteman Brothers. Today, I will be addressing the issues pertaining to the Dunteman Brothers, the insured individuals. My colleague, Mr. Christensen, will be addressing the issues as they pertain to the insured entities. The District Court's ruling must be overturned because first, it resolved a critical issue that is being litigated in the underlying litigation in DuPage County. Second, the Second Amended Complaint in the underlying litigation constitutes a new claim against the Dunteman Brothers. Finally, the Second Amended Complaint is not a related claim and the Dunteman Brothers' conduct is not a related wrongful act. As to my first point, the District Court resolved a critical issue in the underlying litigation. The District Court drew an impermissible arc between the fraud alleged in the Second Amended Complaint and the allegations in the declaratory judgment action in the original complaint in order to deny coverage. The District Court's opinion at page 18 in the appendix stated that the allegations taken together evidence a scheme and a consistent course of conduct by the Dunteman Brothers to defraud the estate. But that's not a determination. She's describing the allegations of the complaints, which is what the relevant question is here, and she sees them all on the page you're talking about. She actually begins this over on page 14. It all arises out of common set of facts. Plainly, what has happened is to be determined and so nobody's been found liable. But I don't know. It seemed to me it did all arise out of this fundamental issue whether Jane was cut out of this company, you know, in a way that was problematic. Well, Your Honor, in its ruling, the District Court found that the Dunteman Brothers had the intent to do a wrongful reduction in the original complaint. In doing that, it construed... Where do you see a finding as opposed to a description of allegations? She keeps using the word allegations over and over again here. Correct, Your Honor, but in its construction of the allegations, it construes them against the insured, the Dunteman Brothers in this case. That is the only way that the District Court could have connected the allegations of the second amended complaint, which were fraud and breach of fiduciary duty, failure to issue distributions, failure to hold corporate meetings to a reduction of shares against Duquesne only. And the word wrongful only appears in paragraph 37 of the original complaint. And it states that Duquesne wrongfully reduced her shares. In order to find that the Dunteman Brothers were involved in that, the District Court not only found that there was fraud in the second amended complaint, but it connected that fraud to the original complaint. I mean, I think I've made my point, but there are other parts of the policy too. The question before us is whether the insurance company got timely notice of this dispute such that its obligations were triggered. And that's why the relation between the original complaint and the second amendment complaint is even pertinent. And the district judge is finding that these are related enough is, seems to me, a fairly routine finding in insurance law. You know, you don't have to have it down to the cross the t's, dot the i's. Is it fairly within the scope of the first complaint? First complaint was for a declaratory judgment and asserted that Jane's rights had been violated. And the other side was going to contest that. They weren't saying, yep, you're right, you know, you've construed this perfectly. They were contesting it. So the insurance company had a right to know, right? Well, Your Honor, it's our position that the first, the original complaint did not constitute a claim. I will let Mr. Christensen address that further. But if you look at the second amended complaint and the original complaint, whether Duquesne wins, loses, or draws on the original complaint, you would still have the second amended complaint. And what I mean by that is there are different outcomes. So in the original complaint, Jane and her estate could win and have that 24%. But that case is not over. And you would still have the second amended complaint, which alleges that the Dunteman brothers are not issuing distributions. Well, if there's zero dollars coming out and distributions, the 24% of zero is still zero. And on the other hand, if Jane loses in the original complaint, and she has only 10%, the court could then find that yes, the Dunteman brothers did engage in fraud and waste and mismanagement. And then Miss Dunteman would have 10% of 10 million or 20 million. The fact that these outcomes are so different, shows and outside of the district courts finding that there was this scheme of fraud that the Dunteman brothers engaged in. If I understand it correctly, we're talking about conduct that occurred years apart, right? That's correct, Your Honor. So the reduction is alleged to have occurred in 2013, which was three or four years before Jane passed away. And Jane did nothing about it. In fact, there was an estate suit filed in Florida by Duquesne to go after those wrongful distributions, those excessive distributions that Jane received. And then the allegations in the second amended complaint are all after Jane had passed away. And her daughter, who is the sister of the four Dunteman brothers, is alleging that the brothers are now freezing out Jane's estate. And they are not issuing distributions, they're not letting her become involved in the business. And they're freezing her out. But as I said, you know, Jane could have that 24%, whether it's by error or mistake, but then the second amended complaint would still be a cause of action. Because now she's alleging that she's not getting any money and that the brothers are siphoning the estate could have simply filed a new separate civil action rather than the second amended complaint, right? That's correct. Because did you all did the defendants? Are you Miss Joinder in the underlying litigation? Your Honor, we moved to dismiss the second amended complaint because the allegations of fraud were not specific enough under Illinois law. And there was also some mingling of direct and derivative causes of action. For example, waste and mismanagement, that's technically a derivative cause of action. And I remind you, my question was, did you argue Miss Joinder? No, we did not, Your Honor. Your Honors, I see that I'm under two minutes, I would like to reserve that time for rebuttal. But if I could just quickly summarize. As I stated, the only way for the court, for the district court to have found that the original complaint and the second amended complaint are related claims is, but for the arc that it drew, connecting the conduct in the second amended complaint and backdating it to the original complaint. Thank you. Thank you, Mr. Christensen. Yes, thank you, Your Honors. And may please the court again, Tom Christensen on behalf of the corporate defendants. And what I want to speak with Your Honors this morning about is two issues. The first of which is whether the initial complaint even constituted a claim under the policy. I'll approach that in a broad sense and then in a more narrow and specific, broadly. Remember what this policy is. This is a director's officer's liability policy. The initial complaint was a declaratory judgment action, which sought to impose no liability on anyone. It sought a ruling from the court regarding whether the decedent was a 24% or a 10% shareholder. So is it your position, Mr. Christensen, that declaratory and say that act was wrong? So on page 12 of the district court's opinion, she's looking at the original complaint. Duquesne's attempt to reduce her ownership by 14%, done without the knowledge or consent of Jane, done without providing consideration, unilaterally taken, asks the court to find that she's the rightful owner, invalidate the wrongful 14% reduction. I mean, isn't that enough from a common sense point of view to show that wrongfulness is what motivates her decision? I mean, courts couldn't even give a declaratory judgment if it was just an advisory opinion. So underneath this, it's a step toward redressing a wrong, right? Correct. I'm not focused on the wrongfulness. I'm focused on whether there can even be an act. And my point to Your reduce her ownership. Her ownership is fixed by law. It's as a matter of law, she is one or the other. She is a 24% or a 10%. Duquesne cannot determine that any more than I can suddenly decide that I'm a 10% owner in Facebook. Well, I mean, you're saying that, but I'm just looking at the complaint as just, you know, actually, if you look at the complaint or the district court, saying that the allegation is that Duquesne indeed attempted to affect her ownership share. Now, you can sit here today and say, Well, you know, actually, we weren't doing that. Maybe that would have been a defense. You know, we love Jane, we wanted her to stay at 24%, or whatever. But the action alleged is that Duquesne reduced her shares. And I not to not to go in circles. But the point I make is that that's the action alleged. But it's an imaginary action. We can't do that. There is no power. It's an impossible legal insurance law, though, would you say that because somebody's complaint in the view of one of the interested parties has no merit that there's no coverage and that there's no duty to report the fact this claim has been raised? I don't I don't say that there's no merit to it, Your Honor, I say that it cannot exist. That when we ask whether there was an act, we have to first ask is the act that is alleged something that could in any conceivable sense have happened? And it cannot, we can't reduce her ownership. Her ownership is fixed by law. So at heart, the declaratory judgment action, although it has those statements, is really saying, Look, Judge, I either am or and always have been a 24%. Or as Duquesne contends, I am and always have been a 10%. That fact is to be decided based upon the legal reality of ownership, not anything that Duquesne did or could have done, because we have no power to reduce her ownership. Legally, that's just not something that can ever happen. Her ownership is what it is, and I can't reduce it. Duquesne can't reduce it. Nobody can. It is what it is. That's a merits-based argument, not to belabor the point that was raised by Judge Wood, but that's a merits-based argument. The allegation in the complaint is that there was an unlawful reduction in her ownership share. And that's what satisfies the definition of claim. I understand, Your Honor. I'm almost out of time. I will point out the second part of my argument, which is that cross-treat is not even referred to anywhere in the initial complaint, unlike the Duntiman brothers, where there is at least some, if the court were to decide that the Duntiman brothers are mentioned in the initial complaint, does indeed warrant drawing that arc that Mr. Kowalski talked about. There's no, all of the allegations of the initial complaint result, relate to ownership in Duquesne. And then in the second amended complaint, there are allegations about shareholder oppression in Duquesne. And then there are brand new allegations about shareholder oppression in cross-treat. But cross-treat has absolutely nothing to do with the initial complaint, is not mentioned. There are no allegations regarding cross-treat in the initial complaint. So even more compelling than the argument asserted by the individuals is cross-treat's argument that there is no relation, no connection whatsoever between the initial complaint and the second amended complaint. And I'm out of time, Your Honor. All right, thank you. Mr. Cutter. Thank you, Chief Judge Sykes. Good morning, and may it please the court. My name is David Cutter with Bates Carey, and we represent Plaintiff Appley, the Hanover Insurance Company. Now, I think it's important for the court, in light of the arguments that were just made, to step back for a moment and think about the nature of the coverage here. This is claims made and reported coverage, and it requires strict compliance that the claim be made during the policy period and then timely reported. And the first question presented on any claims made and reported case is, when was the claim made? And then once the determination as to when the claim was made is determined, then the question is, well, what are the ramifications of whether notice was given or notice was not? In this instance, the original complaint, as the court mentioned during the questioning, asserted conduct on behalf of the original complaint was a claim, i.e. a civil proceeding. It was against an insured entity, Duquesne, and it alleged wrongful acts. It alleged that the conduct engaged in by Duquesne with respect to the reduction of Jane's ownership interest, that it reduced the ownership interest, that it was done without consent, without consideration, unlawfully, and that as a result, it should be set aside. And that meets the policy definitions of a claim for a wrongful act. And as a result, the insureds were required to tender that. Now, the insureds have argued that, well, that was only a claim against Duquesne. And as to Crush Creek, as to the individual insureds, there was no claim against them until the second amended complaint, and therefore no obligation to report until the second amended complaint, and the case could be tendered during the second policy period. But the problem with that analysis is that it's belied by the policy language, and the policy language says that the claim is deemed to be made at the earliest of the related claim, notwithstanding the presence of new parties or new claims. And importantly, the policy that was entered into in this case assigns the right to do everything with respect to the policy to Duquesne. And the insureds, both the other insureds like Crush Creek and the individual insureds, say, I'm giving all of my responsibility to act under this policy to Duquesne. And so, well, they've argued that this is somehow unfair because Duquesne didn't report the initial claim, and Duquesne didn't reasonably believe that there was coverage under the first policy period. The fact of the matter is, it was Duquesne's obligation, and Duquesne's responsibility, and the reasonable belief point... Senator, can I tell you what concerns me about this case? There certainly would be plenty of instances where an insured might face something that might or might not be covered, might seem like not a big deal, and basically not bother notifying the insurance company, right? And I assume that your client doesn't object to insureds who do that sort of thing. If there is no coverage under the policy at all, then... Even if there's coverage. But the problem I have here is that the second amended complaint seems to grow the case exponential with new claims, new parties, events five years later. And if I understand your position on the definition of a claim, you delegate the to the pleading of the underlying plaintiff and the trial court in deciding should this be one case or two. Is that right? Correct. The determination as to whether it's a related claim is based on the allegations made in the underlying litigation. Well, no, your position is that if they are in the same docket number, they are related. It is the same claim, correct? We have two arguments, Your Honor. Let's focus on that one. That's the first one. Because you've got these very broad and somewhat vague definitions of what's a related claim or a related wrongful act. But let's start with the definition of a claim. Is it your position, and are you troubled by the prospect that anything under the same docket number is the same claim? I am not troubled by that prospect. Let's imagine this scenario, then. Suppose that the insured had tendered the original complaint during the relevant policy period. And three, four years later, that complaint is amended with the way the second amended complaint was amended here. You only insured them for that one year, but now the claim has grown, in essence, beyond recognition. Would you still then be obliged to cover them for the second amended complaint? We would absolutely cover them for everything made with respect to this action, subject to other coverage defenses. So you would defer, so you delegate the coverage to the strategic choice of the underlying plaintiff and trial court about whether there's one case or two. Our position is that the claim is the civil action, but because this is a claims made and reported coverage, when the original complaint, if the original complaint was tendered to the insurer, then every modification to that action, regardless of whether it goes on for five or 10 years, would be deemed timely reported and not limited by the timing of the conduct, because the coverage here is for the claim. And so that claim would be timely reported. The fact that the conduct spanned two years before or five years after wouldn't be any limitation at all on the coverage in terms of the timing issue, subject to other policy terms or conditions. So does that flow from the fact that the point of the reporting requirement is to make sure that the insurer, the insurance company, is aware of the litigation, able to control it if appropriate, et cetera. So it seems to me that's why you might follow the one docket number approach. You would be the one perhaps making the misjoinder motion. Exactly. The point of that is that the insurance company has the right and the duty to defend the case. It also has the right to investigate and in certain circumstances to settle. And so the point of the reporting requirement is that the insurance company wants notice from the very beginning. And if the insurance company doesn't get notice, then those rights are not valuable. And in this instance, if notice had been given, by giving notice, the insurers protect themselves for everything that has happened subsequently. So they are fully protected and they are not faced with any sort of timing issues. And that's the very nature of this coverage. Now, regarding the question that I believe was asked about, I believe by Judge Hamilton, about what would happen if the estate filed a new claim or if in fact there was a misjoinder filed motion and the claims were split apart. Well, we wouldn't have the argument that it was the same civil proceeding, right? We wouldn't have the argument based on the definition of claim and community foundation and markets to bank shares. But the related claims issue would be exactly the same. And we think regardless of the question about whether the single civil proceeding is determined as civil action, is determined to be a single claim, the related claim language could not be clear. It defines related claims as all claims based upon, arising from, or in any way related to the same facts, circumstances, situations, transactions, result, damage, or events, or the same series of facts, circumstances, situations, transactions, results, damages, or events. And we've cited numerous cases from Illinois that apply that language to find in circumstances like this, that the claims are related. And Church tried to parse that case law and say, well, there were different formulations of the related claims language, or there were different facts of the underlying claims. And we understand that the language is not all uniform and, of course, facts are different. But the point is that the case law in Illinois determines that that language is unambiguous, language of that sort, and it serves to aggregate the cases. But what that language doesn't mean, and what the cases hold, is that if you're looking at two different claims, whether in two different actions, or in this case, the initial complaint and the original complaint, there doesn't have to be a 100% overlap in the circles. Is it enough just to have a common victim? If there were a common victim, you would still have to look at the allegations to see. How about a common victim 10 years apart? The timing of the wrongful acts is not relevant, because subject to other issues, the issue in this case is not based upon the timing of the wrongful acts. What is significant is what are the nature of the allegations? Do the allegations meet the requirement of what arising from or in any way related to the same facts, circumstances, situations, transactions? In this instance, everything about this is related to James' ownership in Duquesne, right? That's what precipitated this whole dispute. And so that is the same transaction or very least related transaction. And the acts that happened, the reduction of her ownership, the failure to pay back the loan, the dissipation of assets, all of that is all related to Jane's ownership in Duquesne. If there was a separate claim involving Jane that involved her ownership in some other completely unrelated company, well, then you would have to do the analysis to see if it was a related claim. But in that circumstance, you could see different arguments that the claims are not related. But here, the court doesn't really need to go into that analysis, because there is a sufficient overlap to deem the claims related. And again, there doesn't have to be 100% of overlap. Here, the complaint has the same allegations about the conduct in reducing Jane's ownership and then seeks the same declaratory relief. It then just builds upon that. And so, even if the court determines that the fact that it's filed in the same docket number is not determinative, we believe that the related claims provision is clear and unambiguous and requires a holding that the claim be found to be made in the first policy period, not in the second. So the incentive that your client wants to give its insureds is that the first whisper of a potential claim, let us know about it, even if it's trivial, because it could wind up growing like crazy the way this seems to have. Absolutely, Your Honor. And if that's what happens, we'll still defend you. Absolutely. And if there's a whisper, but it's not found to be a claim, or there's a dispute about whether there's a claim, or there's a dispute about whether the policy covers or not, the policy has a provision that deals with that very issue. The policy has a provision that says, if you report something, but it's not a claim, but it is a notice of facts and circumstances, and subsequently becomes a claim, well, then we're going to treat it as timely made during the first policy period. And so... Mr. Carter, doesn't the related claims provision also perform an anti-stacking function in terms of policy limits? Correct. The related claims or related wrongful acts provisions, which work harmoniously together, serve a couple of different features. One is that they determine, they have definitions as to what are the related claims, what are related wrongful acts, how do you look at them together? And the second is that they affect the limits that are available. And the third is that they are timely made, are deemed to be made, or are made or deemed to be made. So they serve all of those functions, which are all very important with respect to a claims manual reported policy, where the timing requirements are strictly enforced. I see my time is expiring. So for these reasons, Hanover respectfully requests that this court affirm the district court ruling in all respects. Thank you. Thank you very much. Ms. Kaposky, I think you had a little time left. Yes. Thank you, Your Honor. Under the district court's ruling, every time there is a declaratory judgment action or any other suit or claim that is made, every single director and officer would seek coverage under the DNO policy, just in case the case later morphed. And like Judge Hamilton stated, was a completely different action involving completely different conduct years later. There are no allegations in the original complaint that the Dunteman brothers were the ones to reduce Jane's ownership. And that is why you are required to construe the pleadings in favor of the insured, because we have no control over what the plaintiff puts in there. And that is why you construe the policy against the drafter, in this case, Hanover. And that is precisely why the duty to defend is broader than the duty to indemnify. What Hanover could have done in this case is defended under a reservation of rights. And if later, once the case was over, it was proven that the Dunteman brothers engaged in that fraudulent conduct, and they were the ones who in fact reduced it all those years ago. Ms. Kapowski, there was no notice to the insurer. So I'm not sure what this argument is directed at. The insurer could not defend under a reservation of rights because it didn't have a notice. Well, Your Honor, it was our position that that first original complaint was not a cause of action, was not a claim to be made. That's your co-counsel's argument, and we'll go to him now, since your time has expired. Mr. Christian. I will just briefly comment that what Mr. Cutter said was that all of this relates to the ownership in Duquesne. So that's where you draw the related claims from the initial complaint to the second amended complaint. The second amended complaint, as relates to it has nothing to do with the ownership in Duquesne. So even if we accept the proposition that the shareholder oppression claims in the new complaint relate to her ownership in Duquesne, because if she's not a shareholder, you can't oppress her interest, and that the reduction in ownership in the initial complaint relates to her ownership in Duquesne, and the Dunteman brothers are referred to in all of those things. Crush Creek has nothing to do with any of that. It is mentioned for the first time in the second amended complaint. All right. Thank you. I think we have your argument, and we'll take the case under advisement.